IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ROYAL PACIFIC LIMITED, a New
Mexico corporation,
    Plaintiff,
v.                                            17cv357 MCA/KBM
FAITH ELECTRIC MANUFACTURE
COMPANY, LTD, a Chinese corporation,
    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Royal Pacific Limited's *Motion to Dismiss Defendant's Counterclaims* [Doc. 13]. The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed. For the following reasons, the Court GRANTS in part and DENIES in part Royal Pacific's *Motion*.

**I.    Background**

Royal Pacific Limited (Royal Pacific) and Faith Electric Manufacture Company, Ltd. (Faith Electric) entered into a distribution agreement through which Royal Pacific became the exclusive distributor of Faith Electric's products, including ground fault circuit interrupter (GFCI) receptacles, to certain companies. [Doc. 1, ¶¶ 6, 7; Doc. 10, Counterclaim ¶¶ 1, 8] One of these companies was Menard.[1] [Doc. 1, ¶ 10; Doc. 10, Counterclaim ¶ 9] The present matter was initiated by filing of Royal Pacific's *Complaint for Declaratory Judgment and Other Relief* [Doc. 1], in which Royal Pacific

---

[1] The parties refer to this company variously as "Menard," "Menard, Inc.," and "Menards." [*See, e.g.*, Doc. 1, ¶ 7; Doc. 10, ¶ 2; Doc. 14, pg. 4] In discussing their arguments, the Court will use the nomenclature used by each party.

alleges that, in 2016, problems arose with the quality of several of Faith Electric's products, including GFCI receptacles. [Doc. 1, ¶¶ 13-14] Royal Pacific further alleges that it notified Faith Electric, but that Faith Electric failed to remedy the problems and that, because the quality problems "damaged Royal Pacific's reputation and harmed Royal Pacific's business relationship with Menards," Royal Pacific terminated the distribution agreement in March 2017. [Doc. 1, ¶¶ 29, 36] Royal Pacific seeks a declaratory judgment that Faith Electric breached the contract between them and breached the implied warranty of merchantability. [Doc. 1] Faith Electric denies that any of its products were defective and alleges in counterclaims that Royal Pacific breached the agreement, defamed Faith Electric, violated the New Mexico Unfair Practices Act (NMUPA), interfered with Faith Electric's prospective business advantage, and committed prima facie tort. [Doc. 10]

After inviting the parties to clarify the facts supporting jurisdiction, this Court found that the parties are diverse and the amount in controversy is greater than $75,000. [Doc. 33] Hence, this Court has jurisdiction under 28 U.S.C. § 1332.

## II. Discussion

Royal Pacific filed an *Answer* to Faith Electric's Counterclaim I and now moves for dismissal of Counterclaims II through V for failure to state a claim. [Doc. 13, pg. 3; Doc. 14] In its *Response* to Royal Pacific's *Motion*, Faith Electric states in a footnote that it "does not oppose dismissal of [the counterclaims for violation of the NMUPA (Count III) and prima facie tort (Count V)] without prejudice to later refiling them—as and if warranted." [Doc. 21, n.1] It opposes dismissal of its counterclaims for

defamation and interference with prospective business advantage. [Doc. 21] After setting out the standard of review, the Court will address the effect of Faith Electric's agreement that counts III and V should be dismissed, then turn to Faith Electric's defamation and interference claims.

**A. 12(b)(6) Standard of review**

Royal Pacific brings its *Motion to Dismiss* under Federal Rule of Civil Procedure 12(b)(6) and argues that Faith Electric has failed to state a claim. [Doc. 13] Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set out "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Supreme Court held that "to withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 570). In applying this test, a court accepts as true all "plausible, non-conclusory, and non-speculative" facts alleged in the plaintiff's complaint, *Shrader v. Biddinger*, 633 F.3d 1235, 1242 (10th Cir. 2011), but does not accept as true any legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In short, in ruling on a Rule 12(b)(6) motion, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Collins*, 656 F.3d at 1214.

## B. NMUPA Unfair Practices Act (Count III) and Prima Facie Tort (Count V)

Faith Electric does not oppose dismissal of its claims for violation of the NMUPA[2] and prima facie tort. [Doc. 21, pg. 4, n.1] However, it asks that the Court dismiss these counts "without prejudice" so that it can later refile them "as and if warranted." [Doc. 21, pg. 4, n.1] Royal Pacific opposes dismissal without prejudice and argues in its *Reply* that, instead, dismissal should be "with prejudice" because Faith Electric is unable to rectify the failings inherent in these counts in any subsequent pleading. [Doc. 27, pg. 1-2]

Faith Electric's statement could be construed as a voluntary dismissal of Counts III and V under Federal Rule of Civil Procedure 41(a)(1), which provides that "the plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Here, so long as the Court does not consider evidence outside of Faith Electric's counterclaims, Royal Pacific's *Motion to Dismiss* would not be converted to a motion for summary judgment, and thus would not prevent a voluntary dismissal under Rule 41(a). When a claim is dismissed pursuant to this rule, "the dismissal is [generally] without prejudice." Fed. R. Civ. P. 41(a).

However, our Tenth Circuit has stated that there is "no authority . . . to support the contention that Rule 41(a) applies to dismissal of less than all claims in an action." *Gobbo Farms & Orchard v. Poole Chem. Co.,* 81 F.3d 122, 123 (10th Cir. 1996). Here, Faith Electric agrees to the dismissal of only two of its five claims. Hence, Rule 41(a)

---

[2] NMSA 1978, §§ 52-12-1 to -26.

does not apply. "Instead, a [p]laintiff who wishes to dismiss some claims, but not others, should do so by amending the complaint pursuant to Rule 15." *Carskadon v. Diva Int'l, Inc.*, No. 12-CV-01886-RM-KMT, 2013 WL 1876784, at *2 (D. Colo. May 3, 2013); *see* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362 (3d ed. 2008).

The Court will therefore construe Faith Electric's statement in the *Response* as a request for leave to amend its complaint. *See Southcrest, L.L.C. v. Bovis Lend Lease, Inc.*, No. 10-CV-0362-CVE-FHM, 2011 WL 1793388, at *4 (N.D. Okla. May 11, 2011) (stating that "[i]n cases where a plaintiff has attempted to use the Rule 41 mechanism to dismiss fewer than all claims against a defendant, courts convert the faulty Rule 41 motion into a Rule 15 motion to amend"). Under Rule 15(a)(2), leave to amend a complaint should be "freely given." Fed. R. Civ. P. 15(a)(2). It is within the Court's discretion, however, to deny leave to amend a pleading based upon "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A motion to amend a complaint is futile if, notwithstanding the amendment, the complaint "would be subject to dismissal." *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.,* 175 F.3d 848, 859 (10th Cir. 1999). Royal Pacific argues that amendment of the counterclaims would be futile, and hence, the Court should dismiss them with prejudice. [Doc. 27] Because Faith Electric stated its assent to

dismissal of the claims in its *Response*, it did not address Royal Pacific's arguments as to whether dismissal should be with or without prejudice. [Doc. 21]

The Court will grant Faith Electric leave to amend its complaint. Royal Pacific's motion to dismiss will thus be denied as moot as to the prima facie tort and NMUPA claims. Should Faith Electric move for leave to reassert such claims in the future, the Court will consider the parties' arguments as to prejudice and futility of such an amendment upon full briefing at that time.

**C. Defamation (Count II)**

Royal Pacific argues that Faith Electric's defamation claim should be dismissed because Faith Electric "does not identify any defamatory statements and [therefore] does not allege the prima facie elements of a claim for defamation under New Mexico law." [Doc. 13, pg. 3] Faith Electric counters that it, "consistent with the notice pleading standard of Rule (8)(a)(2), alleges more than sufficient facts to support its defamation claim." [Doc. 21, pg. 4]

"Generally, the elements of a defamation action include: a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff." *Newberry v. Allied Stores, Inc.*, 1989-NMSC-024, ¶ 16, 773 P.2d 1231; *see* UJI 13-1002(B). In addition, the plaintiff must show that "the defendant knew the communication was false or negligently failed to recognize that it was false." *Young v. Wilham*, 2017-NMCA-087, ¶ 55, 406 P.3d 988. In its counterclaim, Faith Electric alleges that Royal Pacific, "commencing in or around March 2016 and continuing thereafter,

represented to third parties that Faith [Electric's] products were defective and presented safety hazards to persons purchasing and/or using Faith [Electric's] products. [Royal Pacific's] statements were conveyed as statements of fact concerning Faith [Electric] and its products." [Doc. 10, ¶ 23] Faith Electric also alleges that Royal Pacific's "statements were materially false" and that "the true facts were that Faith [Electric's] products were not defective and/or did not pose a safety hazard." [Doc. 10, ¶ 24] In its *Response*, Faith Electric argues that "it is reasonable to infer that included among the 'third parties' identified as recipients of the communications are, at minimum, some of or all of the third parties specifically identified by [Royal Pacific's distribution agreement], namely Home Depot, Lowe's, Menard, HD Supply, Thomas & Betts, Hubbell, Orgill, Jasco, and/or Orbit." [Doc. 21, pg. 5]

As a preliminary matter, the Court notes that Royal Pacific's reliance on two New Mexico Court of Appeals cases, *Weise v. Washington Tru Solutions, L.L.C.,* 2008–NMCA–121, ¶ 21, 192 P.3d 1244, and *Andrews v. Stallings*, 1995-NMCA-015, 892 P.2d 611, for the proposition that a plaintiff "must plead precisely the statements about which they complain" is unavailing because this Court is not bound by pleading standards based in state law. [Doc. 13, pg. 4 (quoting *Andrews*, 1995-NMCA-015, ¶ 14)] Instead, federal courts apply Rule 8 of the Federal Rules of Civil Procedure when assessing the sufficiency of a complaint. *See McGeorge v. Cont'l Airlines, Inc.*, 871 F.2d 952, 955 (10th Cir. 1989) (analyzing a defamation claim under Rule 8). Rule 8 generally requires only "a short and plain statement of the claim." Scholars have noted that, in spite of Rule 8's standard, "the standard for successfully pleading defamation tends to be more

stringent than that applicable to most other substantive claims because of the historically unfavored nature of this type of action, the First Amendment implications of many of these cases, and the desire to discourage what some believe to be all too frequently vexatious litigation." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1245 (3d ed.). Some courts have rejected a heightened pleading standard for defamation claims, holding that only Rule 8's standards apply. *See, e.g.*, *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980) (stating that "[a]lthough charges of libel and slander under former practice were considered largely vexatious and their litigation discouraged by requirements that such contentions be set forth in considerable detail, . . . the federal rules do not require special pleading" and that "the mode of pleading defamation is governed by Rule 8, . . . which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate").

Even when applying Rule 8, however, "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context[.]" *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). Thus, in 1984, our Tenth Circuit examined the sufficiency of the plaintiff's defamation claim that the defendants "damage[d] [the plaintiff's] reputation by 'representing to third persons and to the public that the fault claimed and defamatory statements made against [the p]laintiff were true." *Pike v. City of Mission, Kansas,* 731 F.2d 655, 661 (10th Cir. 1984) (*overruled on other grounds as stated in Baker v. Board of Regents,* 991 F.2d 628, 633 (10th Cir.1993)). It held that "this allegation is inadequate

under Fed.R.Civ.P. 8(a)(2) because it pleads insufficient facts concerning time, place, actors, or conduct to enable defendants to respond." *Id*. In 1989, the Tenth Circuit stated that a defamation complaint must provide "sufficient notice of the communications complained of to allow [the defendant] to defend itself." *McGeorge*, 871 F.2d at 955.

Federal courts relying on a Rule 8 standard have held that some specificity about the allegedly defamatory communication is required in order to give the defendant adequate notice. *See* 50 Am. Jur. 2d § 416 (stating that "[u]nder federal pleading standards, the complaint must at least identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published"). For example, in *Croslan v. Housing Authority for City of New Britain*, the Court found that the plaintiff's allegation that "[defendants] made 'numerous public statements charging [the plaintiff] with lack of skill, mismanagement and general incompetence'" was not sufficiently specific because the plaintiff had failed to "identify the specific subject matter of those statements, the times when the statements were made, and the context in which they were made." 974 F. Supp. 161, 170 (D. Conn. 1997); *see King-Hardy v. Bloomfield Bd. of Educ.*, No. CIV. 3:01CV979(PCD), 2002 WL 32500923, at *10 (D. Conn. Sept. 17, 2002) (holding that an allegation that defendants had placed "'defamatory material of incompetence . . . in the personnel file' of plaintiff" was insufficient because it did "no more than describe the subject matter of statements made by defendants"). In *Bank of Commerce*, the Court found that the defamation claim was not adequately stated where the claimant asserted that the "plaintiff has made and continues to make wildly inaccurate, baseless and false

statements regarding defendant and his business practices, including, . . . that defendant had stolen or otherwise misappropriated funds from his clients [and committed other crimes]" and that "[t]hese false and defamatory statements were communicated to defendant's clients and investors, such as the First State Bank of Livingston, on multiple occasions." *Bank of Commerce & Tr. Co. v. Dominique*, No. CV 07-1332-MLB, 2008 WL 11378844, at *2 (D. Kan. Aug. 22, 2008). The Court stated that these assertions were not sufficient because the claimant "failed to allege who made the statements and to whom the statements were made" and "to give a specific time frame for the alleged statements." *Id*. (footnote omitted).

On the other hand, a claim was stated where the "[p]laintiffs ha[d] identified a specific third person to whom the statements were published, specified a date on which statements were made, and described the content of two allegedly false and defamatory statements," *C & M Prop. Mgmt., LLC v. Moark, LLC*, No. 2:15-CV-336-GZS, 2016 WL 1298098, at *3 (D. Me. Mar. 31, 2016), and where the plaintiffs alleged that "James T. Rymes has published defamatory statements to Brian Fleming," that "[t]hese statements, . . . were made during the fall of 2008, [and] concerned [the plaintiffs' business]," and that the statements accused the plaintiff of committing a crime. *Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.*, No. 09-CV-175-LRR, 2010 WL 2836949, at *3, *5 (N.D. Iowa July 19, 2010) (stating that these allegations were sufficient because they "identify the speaker of the allegedly defamatory statement, the recipient of the statement and what was said," as well as specifically when the statements were made).

The Court concludes that Faith Electric has failed to state a claim about the alleged defamatory statements with sufficient specificity to permit Royal Pacific to defend itself. To reiterate, Faith Electric alleges that Royal Pacific, "commencing in or around March 2016 and continuing thereafter, represented to third parties that Faith [Electric's] products were defective and presented safety hazards to persons purchasing and/or using Faith [Electric's] products." [Doc. 10, ¶ 23] While Faith Electric's allegations identify the content of the allegedly defamatory statements (the quality of their product), they do not identify with any precision when the statements were made, by whom, to whom, or in what context. Instead, Faith Electric alleges that the communications were made sometime after March, 2016, by an unnamed person. Since Faith Electric's counterclaim was filed in October, 2017, this allegation encompasses approximately eighteen months in which the communication(s) could have occurred. Moreover, the assertion (made only in Faith Electric's *Response*, not its counterclaim) that the recipients of the statements include "at minimum, some of or all of" nine different companies merely highlights the vagueness of the assertion. In sum, Faith Electric alleges that, at some point in an eighteen month period, someone at Royal Pacific told, one or more times, one or more people at one or more of nine different companies that Faith Electric's product was faulty.

Moreover, Faith Electric concedes that "it is true that at present Faith [Electric] does not know the exact date of the statements, emails, and other forms of publication of defamatory statements made by [Royal Pacific] to third parties after March 2016." [Doc. 21, pg. 6] It argues that "these details already are in [Royal Pacific's] hands" and that

Faith Electric will have access to those details through discovery. [*Id.*] The problem with this argument is that it suggests that Faith Electric lacks the factual underpinning necessary to plead a defamation claim. By acknowledging that it lacks these facts, Faith Electric "[has] essentially conceded that [it does] not now have information or knowledge which would support the conclusion that [Royal Pacific] defamed [it]." *Kennedy v. Enter. Leasing Co. W.*, No. CIV. 98-718 MV/RLP, 1998 WL 1674699, at *5–6 (D.N.M. Oct. 30, 1998). However, "[a]bsent a specific factual foundation which would support the inference of defamation, [Faith Electric] cannot pursue this claim." *Id.* This claim will be dismissed without prejudice. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (discussing the district courts' authority to dismiss with or without prejudice).

**D. Interference with Prospective Business Advantage (Count IV)**

Royal Pacific asserts that Faith Electric's claim for interference with prospective business advantage must be dismissed because Faith Electric has failed to plead facts relevant to the elements of this claim. [Doc. 13, pg. 9-10] The tort of interference with contractual relations, which encompasses both existing and prospective business relationships, is "well recognized" in New Mexico law. *M & M Rental Tools, Inc. v. Milchem, Inc.*, 1980-NMCA-072, ¶ 14, 612 P.2d 241; *Zarr v. Washington Tru Solutions, LLC*, 2009-NMCA-050, ¶ 6, 208 P.3d 919; *see Silverman v. Progressive Broad., Inc.*, 1998-NMCA-107, ¶ 28, 964 P.2d 61 (stating that "[a] claim for tortious interference with contractual relations that does not induce the breach of an existing contract is in the nature of a claim for interference with prospective business advantage"). "The general

rule [is] that one who, without justification or privilege to do so, induces a third person not to perform a contract with another is liable for the harm caused by his action." *Zarr*, 2009-NMCA-050, ¶ 6, (internal quotation marks, citation and alteration omitted); *see M & M Rental Tools, Inc.*, 1980-NMCA-072, ¶ 20 (adopting the Restatement of Torts 2d, § 766B definition of the tort[3]). "To prove a claim of intentional interference with prospective contractual relations, [a plaintiff is] required to establish that [the defendant] either induced [a third party] not to enter into or continue a prospective relation with [the plaintiff], or prevented [the plaintiff] from acquiring or continuing a prospective relation with [the third party], by interfering through improper means or with an improper motive." *Gregory Rockhouse Ranch, L.L.C. v. Glenn's Water Well Serv., Inc.*, 2008-NMCA-101, ¶ 43, 191 P.3d 548, *abrogated on other grounds by Helena Chem. Co. v. Uribe*, 2012-NMSC-021, ¶ 43, 281 P.3d 237. "What may qualify as 'improper means' depends to some degree on context and can include, but is not limited to predatory behavior, violence, threats or intimidation, deceit or misrepresentation, bribery, economic pressure, unfounded litigation, *defamation*, unlawful conduct, and perhaps violation of business ethics and customs." *Zarr*, 2009-NMCA-050, ¶ 11 (emphasis added).

Royal Pacific asserts first that Faith Electric has failed to allege facts showing that it had a prospective business advantage vis á vis Menard because any products purchased

---

[3] "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation." Restatement of Torts 2d, § 766B.

by Menard were purchased only through Royal Pacific and there was no contract between Faith Electric and Menard. [Doc. 13, pg. 10] In its counterclaim, Faith Electric alleges that it or its predecessor had a relationship with Menard dating back to 2008. [Doc. 10, ¶ 2] It further alleges that

> Faith informed [Royal Pacific] during their discussions in 2013 that Menard was a significant long-term purchaser of the products manufactured and sold by Faith's predecessor, Hongan, in North America and that Faith intended that any North American distribution contract for Faith's products would include Menard with the intention and business plan of continuing and enhancing the longstanding relationship between Faith/Hongan and Menard.

[Doc. 10, ¶ 4] It also states that "Menard purchased $6,448,175.22 of Faith's products between July 1, 2015 and March 20, 2017." [Doc. 10, ¶ 15] These assertions, if true, show that Faith Electric had a relationship with Menard that it took pains to develop and that Royal Pacific was aware of the relationship and Faith Electric's interest in its continuing. Although Faith Electric does not assert that it had a contract with Menard or that Menard purchased goods directly from it, the allegations above related to its relationship to Menard are sufficient to allege a prospective business relationship. *See* Restatement (Second) of Torts § 766B (1979) ("Also included is interference with a continuing business or other customary relationship not amounting to a formal contract.").

Royal Pacific also argues that the interference claim is faulty because "Faith [Electric] does not allege any improper means" or that Royal Pacific "acted solely to harm Faith" Electric.[4] [Doc. 13, pg. 9-10] Faith Electric alleges that:

> 35. Faith [Electric] had a prospective business advantage with Menard.
>
> 36. [Royal Pacific] used improper means or acted with an improper motive to interfere with Faith [Electric]'s prospective business advantage with Menard without privilege and solely for [Royal Pacific]'s benefit.
>
> 37. [Royal Pacific]'s interference with Faith [Electric]'s prospective business advantage with Menard harmed Faith [Electric].

[Doc. 10] These assertions are mere recitations of the elements of the claim and, thus, are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). In its *Response*, Faith Electric argues that it has sufficiently pled its claim because its interference claim "is predicated on [Royal Pacific's] defamatory statements and related conduct concerning the allegedly defective and/or unsafe nature of Faith [Electric's] electric components." [Doc. 21, pg. 12] It argues that through the defamation claim it has sufficiently pled that Royal Pacific "used improper means to interfere with the longstanding commercial relationship between Faith and Menard." [*Id*.] The problem with this argument is that, as discussed above, Faith Electric's factual basis for a defamation claim is itself not sufficient. Hence, it does not provide a sufficient factual

---

[4] In the counterclaim, Faith Electric states that "[Royal Pacific] used improper means or acted with an improper motive." [Doc. 10, ¶ 36] Based on the arguments in its *Response*, however, it appears that Faith Electric has abandoned its allegation that Royal Pacific acted with an improper motive. [*See* Doc. 21, pg. 12] The Court therefore will not address this issue.

showing that Royal Pacific interfered with Faith Electric's business relationship by defaming it. *See Lewis v. Herrman's Excavating, Inc.*, No. 00-4036, 2000 WL 33407060, at *4 (D. Kan. Nov. 2, 2000) (unreported) (finding that because the plaintiff's "inadequately alleged defamation is the wrongful conduct upon which plaintiff relies to state a claim for interference with prospective business relations, the failure to properly assert a defamation claim makes plaintiff's interference claim deficient").

Because the Court will dismiss Faith Electric's defamation claim without prejudice, the Court will similarly dismiss Faith Electric's interference with prospective business relations claim (Count IV) without prejudice.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Faith Electric leave to amend its complaint as discussed in this *Memorandum Opinion and Order*. Faith Electric shall file an amended complaint no later than **June 29, 2018**.

In addition, the Court **GRANTS in PART and DENIES in PART** Royal Pacific's *Motion to Dismiss Defendant's Counterclaims* [Doc. 13]. Specifically, the COURT:

- **DENIES as MOOT** Royal Pacific's *Motion to Dismiss* as to Faith Electric's NMUPA and prima facie tort claims (Counts III and Count V);

- **GRANTS** Royal Pacific's *Motion to Dismiss* as to Faith Electric's defamation claim (Count II) and **DISMISSES** Count II without prejudice;

- **GRANTS** Royal Pacific's *Motion to Dismiss* as to Faith Electric's interference with prospective business advantage claim (Count IV) and **DISMISSES** Count IV without prejudice.

**SO ORDERED this 13th day of June, 2018.**

_____
**M. CHRISTINA ARMIJO**
**Senior United States District Judge**