IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ROYAL PACIFIC LIMITED,**

    **Plaintiff/Counter-Defendant,**

    vs.                                             Civ. No. 17-357  MIS/JFR

**FAITH ELECTRIC MANUFACTURE
COMPANY, LTD.,**

    **Defendant/Counter-Plaintiff**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff/Counter-Defendant Royal Pacific Limited's ("Royal Pacific") Motion to Strike or Exclude Material Supporting Faith Electric Manufacture Company, Ltd.'s Response to Motion for Summary Judgment ("Motion to Strike"), filed February 24, 2021.  Doc. 99.  Defendant/Counter-Claimant Faith Electric Manufacture Company, Ltd. ("Faith Electric"), filed a Response on March 31, 2021.  Doc. 103.  Royal Pacific filed a Reply on April 14, 2021.  Doc. 104.  On December 21, 2021, Faith Electric sought leave to file a surreply.  Doc. 107.  There being no objections, Faith Electric filed a Surreply on January 21, 2022.  Doc. 109.  Having reviewed the parties' submissions and the relevant law, and for the reasons set forth herein, the Court finds that Royal Pacific's Motion to Strike is not well taken and is **DENIED**.

## PROCEDURAL BACKGROUND

On March 21, 2017, Royal Pacific filed its *Complaint for Declaratory Judgment and Other Relief against Faith Electric* ("Complaint").  Doc. 1.  Royal Pacific's Complaint includes claims for Breach of Contract (Count I) and Breach of Implied Warranty of Merchantability

Under the New Mexico Uniform Commercial Code (Count II), and seeks Declaratory Judgment (Count III) as to the terms of the Distribution Agreement and the rights contained therein to obtain cover and terminate. *Id.* at 5-8. In its Complaint, Royal Pacific asserts that on or about July 14, 2015, Royal Pacific and Faith Electric entered into a Distribution Agreement in which Faith Electric appointed Royal Pacific as the exclusive distributor within North America for products manufactured by Faith Electric that were supplied to a list of certain specific companies. *Id.* at 2, ¶ 7. One of the specific companies listed was Menards, an American big box home improvement store. *Id.* The manufactured products Faith Electric supplied included USB receptacles, self-testing ground fault circuit interrupter ("GFCI") receptacles, electrical wall plates, occupancy sensors, and arc fault circuit interrupter receptacles. *Id.* at ¶ 8.

Royal Pacific alleges that quality problems with Faith Electric's products it supplied to Menards began to arise in early 2016 and continued throughout the year. *Id.* at ¶ 12. For example, Royal Pacific cites a full recall by Menards of Faith Electric's USB Power Outlets in February 2016 due to a design flaw. *Id.* at 3, ¶ 13. Royal Pacific also cites over sixty customer complaints related to Faith Electric's GFCI receptacles involving a premature "End of Life" failure that prompted Menards to request written re-affirmation that the GFCI receptacles were safe and met UL[1] listing requirements. *Id.* at ¶¶ 15-21. Royal Pacific alleges it alerted Faith Electric to the concerns over the GFCI receptacles and that Faith Electric made certain changes in an attempt to cure the problems. *Id.* at 4, ¶ 24. When the GFCI receptacles continued to fail, Royal Pacific states it sought testing in or about July 2016 from a third-party laboratory Intertek, which confirmed that Faith Electric's attempts to cure the problems with the GFCI receptacles had failed and that the GFCI receptacles were flawed. *Id.* at ¶¶ 25-28, Doc. 80 at 13, ¶¶ 39, 43.

---

[1] Underwriters Laboratories.

In December 2016, Royal Pacific advised representatives from Menards of Intertek's test results and sought and received approval from Menards to replace Faith Electric's GFCI receptacles with a competing product. Doc. 80 at 15, ¶ 51. On March 20, 2017, Royal Pacific sent Faith Electric a written notification that it was terminating the Distribution Agreement. *Id.* at ¶ 52.

Royal Pacific concedes that the Distribution Agreement contains a termination provision but argues that it is nonsensical and, therefore, unenforceable. *Id.* at 4-5, ¶¶ 30-33. The Distribution Agreement provides

> 9. DEFAULTS. If either Party (herein "Defaulting Party") fails to abide by the obligations of this Agreement, the other Party shall have the option to terminate this Agreement by providing a 30-day written notice to the Defaulting Party. The Defaulting Party shall have the option of preventing the termination of this Agreement by taking corrective action that cures the default, if such corrective action is taken within 60 days after receiving the notice, and if there are no other defaults during such time period.

Doc. 1-1 at 3. Royal Pacific asserts that "[b]y providing a 60-day cure period that is longer than the 30-day period after which the Distribution Agreement is actually terminated, the Termination Provision makes no sense and cannot be performed." Doc. 1 at 5, ¶ 33. As such, Royal Pacific alleges that either party had the right to terminate the Distribution Agreement without notice. *Id.* Royal Pacific further alleges that under the New Mexico Uniform Commercial Code a buyer is permitted to reject acceptance of defective goods and to obtain "cover" by contracting in good faith to purchase goods in substitution. *Id.* at 5, ¶¶ 34-35. Royal Pacific asserts that "[b]ecause of Faith Electric's continual performance problems, which breached the Distribution Agreement and the warranty of merchantability that is implied within the Distribution Agreement, Royal Pacific emailed Faith Electric a letter on March 20, 2017, and notified Faith Electric it was terminating the Distribution Agreement." *Id.* at ¶ 36.

On October 19, 2017, Faith Electric filed its Answer, Affirmative Defenses and Counterclaim. Doc. 10. Faith Electric's Counterclaim included claims for Breach of Written Contract (Count I), Defamation (Count II), Statutory Unfair Trade Practices (Count III), Interference With Prospective Business Advantage (Count IV), and Prima Facie Tort (Count V). Doc. 10 at 12-15. Faith Electric asserts that in 2008, its predecessor company, Fujian Hongan Electric Co., Ltd. ("Hongan"), began and developed a longstanding commercial relationship with Menards. *Id.* at 9, ¶ 2. Initially Hongan sold Menards a variety of its electrical system components through a distribution company called ReSource, LLC. *Id.* Faith Electric states that when ReSource began experiencing financial difficulties in 2011, Hongan turned to Royal Pacific to serve as its North American representative. *Id.* at ¶ 3. Around mid-2013, Faith Electric became Hongan's successor company and initiated discussions with Royal Pacific to remain as its North American representative. *Id.* at 10, ¶ 4. In or around the third quarter of 2013, Faith Electric appointed Royal Pacific as its North American representative "with responsibility for servicing the Faith-Menard relationship pursuant to a verbal/implied-in-fact contract." *Id.* at ¶ 5. Faith Electric states that on or about July 1, 2015, Faith Electric and Royal Pacific decided to memorialize their relationship and entered into the Distribution Agreement. *Id.* at 11, ¶ 8. Faith Electric alleges that by its terms, the Distribution Agreement had a 5-year term as to Menards. *Id.* at ¶ 9. Faith Electric alleges that from the time the parties entered into the Distribution Agreement on July 1, 2015, and the time Royal Pacific purportedly terminated it on March 20, 2017, Menards purchased $6,448,175.22 of Faith Electric's products, which included over a million GFCI receptacles. *Id.* at ¶ 15, Doc. 89 at 2. Faith Electric alleges that "[t]he true facts were that Faith's products were not defective and they did not pose a safety hazard." Doc. 10 at 11, ¶ 14. Faith Electric alleges that Royal Pacific's purported termination of

4

the Distribution Agreement based on Royal Pacific's false assertion that Faith Electric's products were defective and/or posed a safety hazard was a breach of contract. *Id.* at 12, ¶ 19.

On November 15, 2017, Royal Pacific moved to dismiss Faith Electric's counterclaims. Doc. 13. After being fully briefed, now retired District Judge M. Christina Armijo entered a Memorandum Opinion Order on June 13, 2018, in which she dismissed without prejudice Faith Electric's Counts II and IV, and found moot Royal Pacific's motion as to Counts III and V because Faith Electric did not oppose dismissal as to those counts. Doc. 36. Judge Armijo granted Faith Electric leave to amend its counterclaim in light of her rulings. *Id.* To date, however, Faith Electric has not done so. As such, Faith Electric's sole remaining counterclaim is Count I – Breach of Written Contract.

In the meantime, case management deadlines were set and extended multiple times, the parties engaged in an unsuccessful settlement conference before Magistrate Judge John F. Robbenhaar, and the case was recently reassigned to the undersigned presiding judge. Docs. 17, 25, 41, 45, 46, 49, 52, 58, 65, 66, 68, 71, 73, 75, 77, 79, 105. Pending before the Court is Royal Pacific's Motion for Summary Judgment, filed September 30, 2020. Doc. 80. Faith Electric filed its Response on December 30, 2020. Doc. 89. Royal Pacific filed a Reply on February 24, 2021. Doc. 98. The Motion to Strike being addressed herein directly relates to the pending Motion for Summary Judgment.

## **MOTION TO STRIKE**

Royal Pacific moves to strike three declarations Faith Electric attached in support of its Response to Royal Pacific's Motion for Summary Judgment, *i.e.,* the Declaration of Chen "Zigg" Ze, the Declaration of Eric Chan, and the Declaration of Gary Frush. Doc. 99 at 2. Royal Pacific argues that "[t]hese declarations contain inadmissible testimony, including that which is

not relevant, not based on personal knowledge, hearsay, improper lay opinion, and w[ere] not disclosed prior to summary judgment." *Id.* Royal Pacific further argues that exhibits included with the declarations were not produced in discovery or are otherwise inadmissible. *Id.*

Faith Electric opposes the Motion to Strike. Doc. 103. It argues that the declarations and exhibits provide admissible evidence that is material to the issues raised in Royal Pacific's Motion for Summary Judgment. *Id.* at 4. Faith Electric argues that Royal Pacific's argument that the respective declarations amount to undisclosed witness testimony is meritless because Royal Pacific had both the opportunity and/or intent to depose all three of the declarants during the course of discovery yet elected not to do so. *Id.* at 4-5. Further, Faith Electric represents that all three declarants remain willing to appear for depositions. As for the various exhibit attachments to the declarations to which Royal Pacific objects as untimely and/or inadmissible evidence, Faith Electric contends that (1) many of the exhibit documents were in fact disclosed at the outset of the case and/or in subsequent document productions; (2) certain of the documents that were not previously produced were not identified or located by Faith Electric prior to preparing its opposition to Royal Pacific's Motion for Summary Judgment thereby precluding earlier production; (3) the declaration testimony establishes the admissibility of Faith Electric's business records pursuant to Federal Rule of Evidence 803(6); and (4) Royal Pacific has failed to make any cognizable arguments demonstrating prejudice as to the documents that were not produced during discovery. *Id.* at 16-19.

In its Reply, Royal Pacific reasserts that Faith Electric's proffered evidence does not raise any disputes of facts material to Royal Pacific's Motion for Summary Judgment, *i.e.,* it does not dispute (1) the fact that Faith Electric manufactured a defective or otherwise unmerchantable product; (2) the fact that Menards told Royal Pacific it would terminate its agreement with Royal

Pacific if the issue with Faith Electric's products was not remedied; or (3) that Royal Pacific was entitled to cover under New Mexico law and obtain another supplier. Doc. 104 at 2. Royal Pacific contends that matters pre-dating the Distribution Agreement are not relevant and are otherwise inadmissible; that Faith Electric should not be permitted to use undisclosed testimony to explain documents not previously disclosed; that previously undisclosed documents should be stricken; that Faith Electric's characterization of the declaration testimony does not save the inadmissible statements contained therein; and that the declarants do not establish that certain exhibits are admissible business records. *Id.* at 2-8.

Finally, in Faith Electric's Surreply, it states that it is undisputed that Menards never stopped selling Faith Electric's GFCI receptacles at any point during its contract with Royal Pacific. Doc. 109 at 2. Faith Electric states that it is undisputed that Menards continued to sell Faith Electric's GFCI receptacles after Royal Pacific terminated the Distribution Agreement on March 20, 2017. *Id.* Faith Electric states that is undisputed that its GFCI receptacles generated the highest profit margins for Menards among its GFCI offerings. *Id.* And it states it is undisputed that Menards never demanded that Royal Pacific find another manufacturer for Menards' house-brand "Smart Electrician" GFCIs. *Id.* With this in mind, Faith Electric asserts that the evidence it attached to its Response is necessary to show the longstanding relationship it had with Menards, which was established long before Royal Pacific was brought into the relationship, and is key to understanding why Menards never stopped its purchases of Faith Electric's GFCI receptacles in 2016-2017. *Id.*

Faith Electric argues that the declarant testimony it attached to its Response provides admissible evidence demonstrating triable issues of material fact. Doc. 109 at 3-5. It reasserts that the declarants remain available for depositions subject to leave from the Court. *Id.* Lastly,

7

Faith Electrics contends that the documents addressed in Royal Pacific's Motion to Strike were produced by Faith Electric either through initial disclosures, during discovery, by Intertek in response to Royal Pacific's subpoena, or are otherwise admissible. *Id.* at 7-10.

## **STANDARD OF REVIEW**

An affidavit used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In accordance with this rule, courts must generally disregard inadmissible statements contained in a summary judgment affidavit, for example hearsay statements, as such "statements could not be presented at trial in any form." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006); *see also Hansen v. PT Bank Negara Indonesia (Persero),* 706 F.3d 1244, 1250 (10th Cir. 2013) (noting that "[a]lthough affidavits are entirely proper on summary judgment, the content or substance of the evidence contained therein must be admissible.").

"To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (quoting *Argo,* 452 F.3d at 1199). While this does not require that the evidence submitted at summary judgment be "in a form that would be admissible at trial," it does require that "the content or substance of the evidence [submitted at summary judgment] must be admissible." *Id.* (quoting *Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006)). And, where the evidence offered at summary judgment is not admissible in its submitted form, it is incumbent on the proponent of the evidence to demonstrate how the proponent will present the evidence so that it is admissible at trial. *Id.*

While the admissibility of evidence is part of the summary judgment analysis, a motion to strike is not an appropriate vehicle to challenge the opposing party's submissions. *See Smith v. Aurora Pub. Sch.,* 318 F.R.D. 429, 431 (D. Colo. 2016) ("[T]he undersigned does not view a Rule 56(c)(2) objection as an appropriate basis for a separate motion[;] [t]he Motion to Strike is therefore denied *on that basis* as to the affidavit.") (emphasis added); *Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC*, 845 F. Supp. 2d 1241, 1252-53 (M.D. Fla. 2012) ("The proper method to object to evidence submitted on summary judgment is for the party opposing the motion to register its objection to the movant's affidavits by way of the material submitted in opposition to the motion." (internal quotation marks and citation omitted)).

> Rule 56(c)(2)'s language and its corresponding advisory committee notes provide guidance here. Rule 56(c)(2) explains that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Among other changes, Congress amended Rule 56 in 2010 to include this language. Before this amendment, parties properly challenged evidence used in a summary judgment motion by filing a motion to strike. *See* Rule 56, advisory committee's note to 2010 amendments ("There is no need to file a separate motion to strike."). The plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily. *See Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) ("[I]t is no longer necessary for a party to file such a motion; instead, a party may simply object to the material.").

*TDY Indus., LLC v. BTA Oil Producers, LLC*, No. 2:18-CV-0296-SWS/MLC, 2019 WL 12661227, at *1 (D.N.M. June 5, 2019) (quoting *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013) (unpublished)).

## **ANALYSIS**

In light of the foregoing legal standards, the Court finds Royal Pacific's Motion to Strike is not well taken and it is **DENIED**. Nevertheless, the Court will construe Royal Pacific's Motion to Strike as objections under Rule 56(c)(2) and will consider them, along with Faith

9

Electric's response, when resolving Royal Pacific's Motion for Summary Judgment. *See Engineered Arresting Systems Corp., v. Atech, Inc.*, 356 F. Supp. 3d 1323, 1328 (N.D. Ala. 2018) (objections under Rule 56(c)(2) function like trial objections adjusted for the pretrial setting, and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2), advisory committee note (2010 amendments). Rule 56(c)(2) enables a party to submit evidence that ultimately will be admissible at trial in an inadmissible form at the summary judgment stage. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012). A district court has broad discretion to determine at the summary judgment stage what evidence it will consider pursuant to Rule 56(c)(2)). Further, to the extent alleged untimely disclosed material proves relevant to the Court's consideration of Royal Pacific's Motion for Summary Judgment, the Court will exercise its discretion to determine if a Rule 37(c)(1) violation is substantially justified or harmless.[2] *See Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (explaining that in determining whether a Rule 37(c)(1) violation is substantially justified or harmless, the Court, in exercising its discretion, looks at the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.").

**IT IS SO ORDERED.**

_____
**MARGARET I. STRICKLAND**
**United States District Judge**

---

[2] Rule 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).